# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

OLIVIA RUX, JAMIE OWENS, INDIVIDUALLY
AND AS THE NEXT FRIEND OF ISABELLA
MARIE OWENS, A MINOR, SHARLA COSTELOW,
INDIVIDUALLY AND AS THE NEXT FRIEND
OF ETHAN COSTELOW AND BRADY
COSTELOW, MINORS, GEORGE COSTELOW,
DOROTHY COSTELOW, NOVELLA WIGGENS,
INDIVIDUALLY AND AS NEXT FRIEND OF JAMES
RODRICK MCDANIELS, JR., A MINOR, LORIE D.
TRIPLETT, INDIVIDUALLY AND AS NEXT FRIEND
OF ANDREA TRIPLETT, A MINOR, AND
SAVANNAH R. TRIPLETT, A MINOR, JENNIFER
CLODFELTER, INDIVIDUALLY AND AS NEXT
FRIEND OF NOAH CLODFELTER, KENYON
EMBRY, INDIVIDUALLY AND AS NEXT FRIEND
OF CAPRI KUMAR, RONALD W. FRANCIS, SANDRA
FRANCIS, DAVID FRANCIS, JAMES FRANCIS,
JACQUELINE SAUNDERS, INDIVIDUALLY, AND AS
NEXT FRIEND FOR ISLEY SAUNDERS AND
JOCELYN SAUNDERS, MINORS, ROGELO SANTIAGO,
SIMEONA SANTIAGO, SARAH GUANA ESQUIVEL,
JESSE NIETO, THOMAS WIBBERLY, PATRICIA A.
WIBBERLY, THEODIS TRIPLETT, WAYNE TRIPLETT,
REED TRIPLETT, SAVANNAH TRIPLETT, KEVIN
TRIPLETT, FREDDIE TRIPLETT GARY SWENCHONIS,
SR., DEBORAH SWENCHONIS, SHALALA
SWENCHONIS-WOOD, KATE BROWN, SEANWALSH,
KEVIN ROY, LOU GUNN, MONA GUNN,JAMAL
GUNN, JASON GUNN, ANTON J. GUNN,LEROY
PARLETT, ETTA PARLETT, INDIVIDUALLY AND
AS NEXT FRIEND OF HANNAH PARLETT, A MINOR,
KERA MILLER, MATTHEW PARLETT, JOHN
CLODFELTER, GLORIA CLODFELTER,
JOSEPH CLODFELTER, TONI WIBBERLY,
DIANE MCDANIELS, FREDERICKA
MCDANIELS-BESS, TERESA SMITH, and TIMOTHY P.
SCEVIOUR, AS PERSONAL REPRESENTATIVE
OF THE ESTATES OF KENNETH EUGENE
CLODFELTER, RICHARD COSTELOW, LAKEINA
MONIQUE FRANCIS, TIMOTHY LEE GAUNA,
CHERONE LOUIS GUNN, JAMES RODERICK
McDANIELS, MARC IAN NIETO, RONALD SCOTT
OWENS, LAKIBA NICOLE PALMER, JOSHUA
LANGDON PARLETT, PATRICK HOWARD ROY,
KEVIN SCOTT RUX, RONCHESTER MANANGA
SANTIAGO, TIMOTHY LAMONT SAUNDERS, GARY
GRAHAM SWENCHONIS, JR., ANDREW TRIPLETT
AND CRAIG BRYAN WIBBERLY

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.:
2:04CV428

{8331\00047678.1}1

| | | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REPUBLIC OF SUDAN, | ) | |
| | ) | |
| Defendant. | ) | |

## FOURTH AMENDED COMPLAINT

PLAINTIFFS, by and through their undersigned counsel, bring this action against DEFENDANT REPUBLIC OF SUDAN, seeking damages arising out of the extrajudicial killing of the seventeen American sailors stationed on board the U.S.S. Cole on October 12, 2000. Plaintiffs seek judgment for damages against Defendant Republic of Sudan, which provided material support, in the form of funding, direction, training and cover to Al Qaeda, a worldwide terrorist organization whose operatives facilitated the planning and execution of the bombing of the U.S.S. Cole. In support of their Complaint, Plaintiffs allege that:

### JURISDICTION AND VENUE

1.      Jurisdiction over the subject matter of this case arises from 28 U.S.C. § 1330(a). Defendant Republic of Sudan is subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7). Plaintiffs have complied with all conditions precedent to this action. As required by 28 U.S.C. § 1605(a)(7), Plaintiffs have offered to arbitrate this action pursuant to the international rules of arbitration. A copy of said offer was filed contemporaneously with the filing of Plaintiffs' original Complaint.

2.      This Court has subject matter and personal jurisdiction over Defendant. Venue is proper in this Judicial District. At the time of the incident complained of herein, the following Plaintiffs maintained their principal place of residence within this District:

    (a)    Olivia Rux

    (b)    Novella Wiggens

    (c)    Lorrie D. Triplett

    (d)    Sharla Costelow

    (e)    Jennifer Clodfelter

Further, the each of the Plaintiffs' decedents was stationed on board the U.S.S. Cole, which was permanently stationed in her home port in Norfolk, Virginia, located within the Eastern District of Virginia.

3.    Service of the Summons, Complaint, Notice of Suit and Offer to Arbitrate can be made upon Defendant Republic of Sudan by service on the Defendant's Ministry of Foreign Affairs, in care of the Embassy of the Republic of the Sudan located at 2210 Massachusetts Avenue NW, Washington, D.C. 20008 pursuant to 28 U.S.C. §1608(a)(3).

## THE PARTIES

4.    Timothy Sceviour is the duly appointed personal representative of the estates of each of the seventeen decedents. Seven of the Plaintiffs herein are the surviving spouses or permanent companion of sailors wrongfully killed aboard the U.S.S. Cole. Nineteen of the Plaintiffs are each a sibling of one of the sailors. Twenty three of the Plaintiffs are parents of one of the sailors. Ten of the Plaintiffs, on whose behalf suit is brought by the next friend of each, are a minor child of sailors killed aboard the U.S.S. Cole. Each of the Plaintiffs' decedents was killed in an act of extrajudicial killing on October 12, 2000 while aboard the U.S.S. Cole, while berthed in a harbor in the waters of Yemen. The bombing of the U.S.S. Cole was an act of international terrorism as defined in 18 U.S.C. §2331.

5.    Each of the Plaintiffs herein claims loss of either solatium or consortium as the result of the wrongful death of their decedent, as is appropriate depending on each Plaintiff's relationship to such decedent. Each Plaintiff herein also claims intentional infliction of emotional distress.

**KENNETH EUGENE CLODFELTER**

6.    Jennifer Clodfelter is the widowed spouse of Kenneth Eugene Clodfelter. John and Gloria Clodfelter are the parents of Kenneth Eugene Clodfelter. Joseph Clodfelter is a sibling of Kenneth Eugene Clodfelter. Noah Clodfelter is the minor child of Kenneth Eugene Clodfelter. Kenneth Eugene Clodfelter, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack against and the bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

**RICHARD COSTELOW**

7.    Sharla Costelow is the widowed spouse of Richard Costelow. George and Dorothy Costelow are the parents of Richard Costelow. Ethan Costelow and Brady Costelow are the minor sons of Richard Costelow. Richard Costelow, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack against and the bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

**LAKEINA MONIQUE FRANCIS**

8.    Ronald Francis and Sandra Francis are the parents of Lakeina Monique Francis. Lakeina Monique Francis, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S S. Cole while berthed in the waters of a harbor in Yemen.

## TIMOTHY LEE GAUNA

9.      Sara Gauna Esquivel is the mother of Timothy Lee Gauna. Timothy Lee Gauna, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen

## CHERONE LOUIS GUNN

10.     Lou Gunn and Mona Gunn are the parents of Cherone Louis Gunn. Jason Gunn, Jamal Gunn and Anton J. Gunn is each a sibling of Cherone Louis Gunn. Cherone Louis Gunn, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen.

## JAMES RODRICK McDANIELS

11.     Novella Wiggins is the long-term companion of James Roderick McDaniels and mother of the minor child James Roderick McDaniels, Jr., the son of James Rodrick McDaniels, Diane McDaniels is the mother of James Roderick McDaniels. Frederica McDaniels-Bess is the sibling of James Roderick McDaniels. James Roderick McDaniels, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

## MARC IAN NIETO

12.     Jesse Nieto is the father of Marc Ian Nieto. Marc Ian Nieto, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

## RONALD SCOTT OWENS

13.    Jamie Owens is the widowed spouse of Ronald Scott Owens. Isabella Marie Owens is the minor child of Ronald Scott Owens. Ronald Scott Owens, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

## LAKIBA NICOLE PALMER

14.    Capri Kumar is the daughter of Lakiba Nicole Palmer. Kenyon Embry is the brother of Lakiba Palmer. Teresa Smith is the mother of Lakiba Nicole Palmer. Lakiba Nicole Palmer, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

## JOSHUA LANGDON PARLETT

15.    Leroy Parlett and Etta Parlett are the parents of Joshua Langdon Parlett. Kera Miller, Hannah Parlett and Matthew Parlett are each a sibling of Joshua Langdon Parlett. Joshua Langdon Parlett, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

## PATRICK HOWARD ROY

16.    Kate Brown is the mother of Patrick Howard Roy. Sean Walsh and Kevin Roy are siblings of Patrick Howard Roy. Patrick Howard Roy, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

**KEVIN SHAW RUX**

17.    Olivia Rux is the widowed spouse of Kevin Shaw Rux.  Kevin Shaw Rux, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

**RONCHESTER MANANGA SANTIAGO**

18.    Rogelio and Simeona Santiago are the parents of Ronchester Mananga Santiago. Ronchester Mananga Santiago, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole whiled berthed in the waters of a harbor in Yemen.

**TIMOTHY LAMONT SAUNDERS**

19.    Jacqueline Saunders is the widow of Timothy Lamont Saunders.  Isley Gayle Saunders and Jocelyn Tiera Saunders are the minor daughters of Timothy Lamont Saunders. Timothy Lamont Saunders, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen.

**GARY GRAHAM SWENCHONIS, JR.**

20.    Gary and Deborah Swenchonis are the parents of Gary Graham Swenchonis, Jr. Shalala Swenchonis-Wood is a sibling of Gary Graham Swenchonis, Jr.    Gary Graham Swenchonis, Jr., deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen.

## ANDREW TRIPLETT

21.    Lorrie D. Triplett is the widowed spouse of Andrew Triplett. Andrea and Savannah R. Triplett are the minor children of Andrew Triplett. Reed and Savannah Triplett are the parents of Andrew Triplett. Kevin, Wayne, Freddie and Theodis Triplett are the siblings of Andrew Triplett. Andrew Triplett, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen.

## CRAIG BRYAN WIBBERLY

22.    Thomas and Patricia Wibberly are the parents of Craig Bryan Wibberly. Toni Wibberly is the sibling of Craig Bryan Wibberly. Craig Bryan Wibberly, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in the waters of a harbor in Yemen.

23.    Defendant Republic of Sudan is a foreign state that, at all times material to this action, has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act, 50 U.S.C. § 2405(j). It was first designated a state sponsor of terrorism by U.S. Secretary of State Warren Christopher on August 12, 1993. It remained so designated at the time of the attack on the U.S.S. Cole and is still so designated. The Republic of Sudan has provided material support and resources to Al Qaeda, a worldwide paramilitary terrorist organization. The Republic of Sudan has sponsored Al Qaeda, within the meaning of 28 U.S.C. 1605(a)(7) and 28 U.S.C. § 1605 note, by providing it with funding, direction, training and cover for its terrorist activities worldwide.

## ALLEGATIONS OF LIABILITY AS TO ALL COUNTS

24.    The acts of Defendant Republic of Sudan set forth herein are in violation of 18 U.S.C. §§2339A and 2339B and created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. §1606 for wrongful death under the general maritime common law, or alternatively under the Death on the High Seas Act, 46 U.S.C. §§761 et seq., and for the tort of intentional infliction of emotional distress under common law. The acts of Defendant Republic of Sudan in knowingly and materially providing support of the perpetrators of the bombing of the U.S.S. Cole were and are acts of international terrorism under 18 U.S.C. §§2331, 2333(a) and created civil liability on the part of Defendant Republic of Sudan.

25.    The attack on October 12, 2000 against the U.S.S. Cole while in a harbor in the waters of Yemen was part of a decade-long plan of international terrorism that was conceived and implemented pursuant to an international conspiracy of terrorists, usually referred to as Al Qaeda, which conspiracy was joined and supported by the Republic of Sudan.

26.    From its inception during the late 1980s, Al Qaeda was and is a worldwide terrorist organization whose main aim was and is to strike at American targets. Al Qaeda could not have existed or planned its acts of terrorism, including an act directed at an American Naval vessel, without the support of state sponsors of terrorism, including the Republic of Sudan.

27.    Defendant Republic of Sudan, by and through officials, employees or agents, acted knowingly and willfully, used funds and other assets belonging to the Republic of Sudan to provide material support and resources to Osama bin Laden and to al Qaeda. The provision of material support or resources was engaged in by officials, employees and agents of the Republic

Sudan while such officials, employees or agents were acting within the scope of their office, employment or agency.

28.    From 1991 until 1996, the Republic of Sudan provided shelter and a safe haven for operations of Al Qaeda's leader, Osama Bin Laden.  After 1996, it continued to render support and shelter of Al Qaeda operatives, including Yemeni militants who planned the attack on the U.S.S. Cole on October 12, 2000.

29.    Commencing in 1991, Osama Bin Laden and his Al Qaeda organization were welcomed in Sudan by the leader of the National Islamic Front, Hassan al-Turabi, and other major political leaders in Sudan, including its President. By the end of 1991, there were between 1000 and 2000 members of Al Qaeda being sheltered in Sudan.

30.    The decision by Al Qaeda to move to Sudan was motivated by an express offer of help and assistance by the government of the Republic of Sudan.

31.    Al Qaeda relied heavily upon its state sponsorship by the Republic of Sudan. Sudanese President Omar Bashir authorized Al Qaeda activities in his country, including the following:

(a)    Al Qaeda was provided with special authority by which it was allowed to import military materials and other items while avoiding the payment of taxes or import duties and avoiding customs inspections; and

(b)    Al Qaeda was exempted from the jurisdiction of local law enforcement; and

(c)    By 1998 Al Qaeda was provided with Sudanese diplomatic credentials

allowing its members to travel across international borders and move

materials and cargo across international borders without scrutiny or

inspection; and

(d)     Al Qaeda members were given Sudanese passports; and

(e)     Al Qaeda was permitted to keep boats stored and maintained at Port

Sudan.

32.     Beyond the specific matters referred to above, the Republic of Sudan cooperated

with Al Qaeda in a variety of ways to enhance that organization's terrorist operations.    The

protection and support provided by the Republic of Sudan allowed Al Qaeda to grow and

develop into a sophisticated organization, including multi-national corporations with investments

and well organized, concealed accounts and operations worldwide.    Sudan allowed Al Qaeda to

use its diplomatic embassies in New York, London and Rome for fundraising to support its

terrorist activities.

33.     One method employed was the creation of businesses owned and or controlled by

Al Qaeda operatives, through which Al Qaeda would provide capital and infrastructure to the

Republic of Sudan.  The Republic of Sudan permitted Al Qaeda to use those businesses as a front

to employ and maintain safe havens for its terrorist militants.  Included in these activities were

the following:

(a)     Al Hijrah for Construction and Development, Inc. This Al Qaeda business built

the Tahaddi road which linked Khartoum with Port Sudan and a modern airport

near Port Sudan. This company worked directly with Sudanese military officials

to transport terrorists and provide them with training in Al Qaeda's terrorist

training camps in Northern Sudan.

(b) <u>Wadi al Aqiq Company, Ltd.</u> This Al Qaeda business engaged in import-export from Sudan. Together with another Al Qaeda business, Taba Investment Company, Ltd., an investment company, it secured a near monopoly over Sudan's major agricultural exports. This monopoly was shared with members of the National Islamic Front.

(c) <u>Al Shamal Islamic Bank.</u> Although this bank was formed in 1983, it did not start operations until 1990 with a paid-in-capital of $3.9 million. Significantly shares for subscription were issued between 1997 and 2000. Osama Bin Laden invested $50,000,000 in this bank. The Bank's chairman, Adil Abd el Agil Botorgey, is also the chairman of al-Bir Saudi Organization whose U.S. Branch, Benevolence International Foundation, was declared an Al Qaeda front and its assets frozen by the U.S. Treasury Department. Al Qaeda operatives regularly use accounts at this Bank to fund criminal and terrorist activities.

(d) Osama Bin Laden owned other businesses in concert with the Republic of Sudan, which were established to and did provide income to support Al Qaeda and to provide cover for the procurement of explosives, weapons and chemicals, and for the travel of Al Qaeda operatives. These included Wadi al Aqiq, a holding company, al Themar al Mubaraka, an agricultural company, Ladin International, an investment company, Khartoum Tannery, a leather company, Gum Arabic Company, Ltd., and Qudarat Transport Company, a transportation company.

34. Al Qaeda operatives received not less than four large crates of weapons and

explosives from the Sudanese military, stored these containers at a farm owned by Osama Bin Laden and then shipped the same on an Al Qaeda owned vessel from the Port of Sudan to Yemen for further terrorist activities in Yemen.

35.    The Republic of Sudan allowed its diplomatic pouch to be used to transport explosive materials by Al Qaeda outside the geographic borders of Sudan.

36.    The Republic of Sudan also facilitated the operation of Al Qaeda training camps within its borders, and Al Qaeda operatives were trained in the manufacture and use of bombs similar to that which was used on October 12, 2000, in the attack against the U.S.S. Cole. The main training camp was on a twenty-acre site near Soba, the location where the four crates of weapons and explosives delivered by the Republic of Sudan and sent to Al Qaeda representatives in Yemen were originally stored.

37.    The Republic of Sudan has willingly become part of the Al Qaeda terrorist network. Further, it has provided its facilities for annual meetings of the Popular Arab and Islamic Conference, where terrorist organizations meet to plan and discuss terrorist attacks, planning, funding and financing, concealment and other terrorism related topics.  The Republic of Sudan has provided safe harbor for terrorists.  It has provided 200 passports to Al Qaeda so that terrorists could travel freely under new identities.

38.    The Republic of Sudan facilitated the training of terrorists from Yemen at National Islamic Front training camps.  Further, Al Qaeda terrorists, once trained at these camps, were relocated to Yemen to continue their conspiracy.

39.    One of the key planners of the attack on the U.S.S. Cole was the Al Qaeda chief of operations in Yemen, Qaed Salim Sinan al-Harethimet, who, with Osama Bin Laden, received

briefings in Sudan as to the ongoing planning of attacks against U.S. interests.

40.    Al Qaeda members flew airplanes owned by Victor Bout containing cargo consisting of gold, into Sudan. This gold was used to fund terrorist activities described herein, including the bombing of the U.S.S. Cole.

41.    As a result of the support in facilities, as a safe haven, and of materials including radios, weapons and explosives by the Republic of Sudan to Al Qaeda, the Republic of Sudan caused Al Qaeda to be able to plan and execute its attack against an American naval vessel, and in particular the attack against the U.S.S. Cole, which lead to the deaths of the seventeen decedents named herein. As a result, the Republic of Sudan is liable to Plaintiffs for their damages.

42.    Ayman Al-Zawahiri, a top-ranking member of Al Qaeda, reached an agreement in 1998 with Sudan's national Islamic groups to establish budgets to finance terror operations.

43.    Sudanese Foreign Minister Mustafa Osman Ismail admitted Sudan's role in supporting terrorism and Al Qaeda specifically on a C-SPAN broadcast on May 21, 2003.

44.    Each of the Plaintiffs have suffered the loss of the love and emotional support, affection, and companionship of the seventeen sailors named above for which they are entitled to damages consistent with their status as recognized by the law, applicable to this matter pursuant to 28 U.S.C. §1606.

## COUNT I – WRONGFUL DEATH UNDER FEDERAL MARITIME COMMON LAW

Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 though 44.

45.    This cause of action arises under the federal maritime common law tort of

wrongful death.

46.    At the time of the bombing of the U.S.S. Cole, the vessel was within the territorial waters of Yemen, and not on the high seas.

47.    The Defendant Republic of Sudan is a foreign sovereign state, and not a person, vessel or corporation within the meaning of the Death on the High Seas Act.

48.    The wrongful actions of the Defendant Republic of Sudan, in providing material support to Al Qaeda, are the actual cause of the attack and bombing of the U.S.S. Cole, causing the deaths of the seventeen decedents named herein.

49.    As a result of the wrongful death of the seventeen decedents, Plaintiffs have suffered a loss of support, loss of consortium or solatium (depending on each Plaintiff's relationship to their relative decedent), and loss of society.  Plaintiffs have also suffered mental anguish and severe emotional distress as a direct result of the bombing and killing of the decedents.

## COUNT II - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## KENNETH CLODFELTER

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

50.    Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

51.    Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Kenneth Clodfelter, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

52.    Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

53.    In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

54.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

55.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

56.    On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his wife Jennifer Clodfelter, 22 years of age, and one son, Noah Clodfelter, 2 years of age.

57.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

58.    By reason of decedent's wrongful death, plaintiff and decedent's spouse and child have been deprived of decedent's services and society.

59.    As a result of decedent's death, the estate incurred funeral and burial expenses,

including the price of a cemetery lot.

## COUNT III - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
### RICHARD COSTELOW

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

60.    Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

61.    Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Richard Costelow, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

62.    Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

63.    In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

64.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

65.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and

employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

66.    On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his wife Sharla Costelow, 33 years of age, and two sons, Brady Costelow, 6 years of age, and Ethan Costelow, 4 years of age.

67.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

68.    By reason of decedent's wrongful death, plaintiff and decedent's spouse and children have been deprived of decedent's services and society.

69.    As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT IV - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT LAKEINA FRANCIS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

70. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

71. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Lakeina Francis, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

72. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military

vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

73. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

74. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

75. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

76. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, her parents, father Ronald Francis, 44 years of age, and mother Sandra Francis, 41 years of age.

77. At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

78. By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

79. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT V - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## TIMOTHY GAUNA

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

80. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

81. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Timothy Gauna, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

82. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

83. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

84. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

85. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

86. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his mother, Sarah Gauna Esquivel, 38 years of age.

87. At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

88. By reason of decedent's wrongful death, plaintiff and decedent's mother has been deprived of decedent's services and society.

89. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT VI - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## CHERONE GUNN

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

90. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

91. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Cherone Gunn, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

92. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

93. In 2000, decedent, in the course of his service in the United States Navy, was a crew

member in service of the U.S.S. Cole wherever its missions and orders directed it.

94. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

95. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

96. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his parents, father Lou Gunn, 50 years of age, and mother Mona Gunn, 49 years of age.

97. At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

98. By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

99. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT VII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## JAMES MCDANIELS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

100. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

101. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of James McDaniels, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

102. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

103. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

104. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

105. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

106. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his permanent living companion Novella Wiggins, 19 years of age, to whom he was engaged o be married, and son James McDaniels, Jr., as yet unborn at that time.

107.     At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

108. By reason of decedent's wrongful death, plaintiff and decedent's spouse and child have been deprived of decedent's services and society.

109. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT VIII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT MARC NIETO

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

110. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

111. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Marc Nieto under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

112. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

113. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

114. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

115. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

116. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his father Jesse Nieto, 56 years of age.

117.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

118. By reason of decedent's wrongful death, plaintiff and decedent's father have been deprived of decedent's services and society.

119. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT IX - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## RONALD OWENS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

120.  Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

121.  Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Ronald Owens, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

122.  Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

123.  In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

124.  On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

125.  Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

126. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his wife Jaime Owens, 23 years of age, and daughter, Isabella Owens, 4 years of age.

127.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

128. By reason of decedent's wrongful death, plaintiff and decedent's spouse and child have been deprived of decedent's services and society.

129. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT X - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## LAKIBA PALMER

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

130. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

131. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Lakiba Palmer, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

132. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

133. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

134. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

135. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

136. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, her daughter Capri Kumar, 1 years of age, and mother Theresa Smith, 40 years of age.

137.     At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

138. By reason of decedent's wrongful death, plaintiff and decedent's child and mother have been deprived of decedent's services and society.

139. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XI - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## JOSHUA PARLETT

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

140. Plaintiff Sceveiour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

141. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Joshua Parlett, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

142. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

143. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

144. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

145. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

146. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his parents, father Leroy Parlett, 51 years of age, and mother Etta Parlett, 44 years of age.

147. At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

148. By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

149. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT PATRICK ROY

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

150. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

151. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Patrick Roy, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

152. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

153. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

154. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

155. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

156. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his mother, Kate Brown, 51 years of age.

157.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

158. By reason of decedent's wrongful death, plaintiff and decedent's mother have been deprived of decedent's services and society.

159. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XIII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
### KEVIN RUX

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

160.  Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

161.  Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Kevin Rux, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

162.  Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

163.  In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

164.  On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant.  The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives.  The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

165.  Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

166. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his wife, Olivia Rux, 34 years of age.

167.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

168. By reason of decedent's wrongful death, plaintiff and decedent's wife have been deprived of decedent's services and society.

169. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XIV - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT RONCHESTER SANTIAGO

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

170. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

171. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Ronchester Santiago, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

172. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

173. In 2000, decedent, in the course of his service in the United States Navy, was a crew

member in service of the U.S.S. Cole wherever its missions and orders directed it.

174. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

175. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

176. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his parents, father Rogelio Santiago, 55 years of age, and mother Simeona Santiago, 54 years of age.

177. At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

178. By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

179. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XV - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## TIMOTHY SAUNDERS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

180. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

181. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Timothy Saunders, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

182. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

183. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

184. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

185. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of

Sudan's wrongful acts described specifically in this Complaint.

186. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his wife, Jacqueline Saunders, 29 years of age, and two children, Isley Saunders, 10 years of age, and Jocelyn Saunders, 7 years of age.

187.     At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

188. By reason of decedent's wrongful death, plaintiff and decedent's wife and children have been deprived of decedent's services and society.

189. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XVI - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT GARY SWENCHONIS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

190. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

191. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Lakiba Palmer, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

192. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

193. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

194. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

195. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

196. On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his parents, father Gary Swenchonis, 46 years of age, and mother Deborah Swenchonis, 45 years of age.

197.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

198. By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

199. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XVII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT
## ANDREW TRIPLETT

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

200. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

201. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Andrew Triplett, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

202. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

203. In 2000, decedent, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

204. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant. The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

205. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

206. On October 12, 2000, the date of decedent's death, decedent left, in addition to the

personal representative, his wife, Lorrie Triplett, 32 years of age, two children, Andrea Triplett, 8 years of age, and Savannah Triplett, 4 years of age, and a dependant brother, Freddie Triplett, 33 years of age.

207.    At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

208. By reason of decedent's wrongful death, plaintiff and decedent's spouse, children and brother have been deprived of decedent's services and society.

209. As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XVIII - WRONGFUL DEATH UNDER THE DEATH ON THE HIGH SEAS ACT CRAIG WIBBERLY

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 44.

210. Plaintiff Sceviour brings this action under the Death On the High Seas Act, 46 USC § § 761 et seq..

211. Plaintiff Sceviour is the duly appointed and qualified personal representative of the estate of Craig Wibberly, under letters of administration duly issued by the Circuit Court of Norfolk, Virginia.

212. Defendant is a foreign sovereign state who caused and was complicit with the terrorist organization al Qaeda in perpetrating the bombing of the U.S.S. Cole, the United States military vessel on which each of the deceased served, while berthed in Aden Harbor, Yemen.

213. In 2000, decedent, in the course of his service in the United States Navy, was a crew

member in service of the U.S.S. Cole wherever its missions and orders directed it.

214.  On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, beyond a marine league from United States shores, decedent was murdered by al Qaeda operatives supported by the Defendant.  The al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives.  The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

215.  Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

216.  On October 12, 2000, the date of decedent's death, decedent left, in addition to the personal representative, his parents, father Thomas Wibberly, 52 years of age, and mother Patricia Wibberly, 49 years of age.

217.      At the time of decedent's death, decedent was able bodied and employed and capable of earning a salary continuing during the period of his working life through retirement.

218.  By reason of decedent's wrongful death, plaintiff and decedent's parents have been deprived of decedent's services and society.

219.  As a result of decedent's death, the estate incurred funeral and burial expenses, including the price of a cemetery lot.

## COUNT XIX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER COMMON LAW – ALL PLAINTIFFS

Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1

though 44.

220.    The actions of Defendant Republic of Sudan of providing material support causing the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

221    These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe emotional distress on the family members of the deceased victims.

222    The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that their relatives on board were killed in the attack.

223.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of the Plaintiffs suffering severe emotional distress.

224.    As a proximate result, each of the 59 original Plaintiffs has suffered extreme emotional damages through the loss of their family members.

### **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS respectfully request the following relief:

1.    Compensatory damages against Defendant Republic of Sudan for the wrongful deaths of the seventeen decedents;

2.    Compensatory damages against Defendant Republic of Sudan for the intentional infliction of emotional distress upon the Plaintiffs;

3.    Costs of this suit, including reasonable attorneys' fees set by this Honorable Court; and

4.    Any further relief which the Court deems just and proper.

Respectfully submitted,

By: _Mary Jane Hall_____

MARY JANE HALL
*Local Counsel*
Virginia Bar #26509
Kaufman & Canoles, P.A.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Tel: (757) 624-3130
Fax: (757) 624-3169

| | | |
|---|---|---|
| ANDREW C. HALL | JAMES COOPER-HILL | NELSON M. JONES, III |
| Florida Bar # 111480 | Texas Bar # 04789300 | D.C. Bar # 320266 |
| 1428 Brickell Avenue, Penthouse | 320 Olympic | 440 Louisiana, Suite 475 |
| Miami, FL 33131 | Rockport, Texas 78382 | Houston, Texas 77002 |
| (305) 374-5030 | (361) 729-3923 | (713) 224-5323 |
| (305) 374-5033 – Fax | (361) 727-0447 - Fax | (713) 224-8525 |

*Attorneys Pro Hac Vice for the Plaintiffs*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been served via Facsimile and U.S. Mail on this 16ᵗʰ day of February 2007, to: Gregory N. Stillman, Esq. Hunton & Williams LLP, 500 East Main Street, Suite 1000, Norfolk, Virginia 23510.

_Mary Jane Hall_____
MARY JANE HALL